UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT F. WOODLEY, Individually and on Behalf of All Others Similarly Situated<br><br>   Plaintiff,<br><br>   vs.<br><br>DAVID M. WOOD, KERI CROWELL, and QUENTIN R. HICKS,<br><br>   Defendants. | CIVIL ACTION<br><br>ECF CASE<br><br>Case No. 1:20-cv-02357 (ER) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND .............................................................................................................. 2

    A.    Gulfport and its full-cost accounting method for oil and gas properties. ............... 2

    B.    Gulfport's Q3 2019 accounting error and Q4 2019 restatement ........................... 4

    C.    Plaintiff files the AC and the SAC, alleging various false and misleading statements ............................................................................................................. 6

III.  LEGAL STANDARD ...................................................................................................... 7

IV.   ARGUMENT & AUTHORITIES .................................................................................... 8

    A.    The SAC fails to state a Section 10(b) claim. ....................................................... 8

        1.    The SAC must plead facts giving rise to a strong inference of scienter. ............................................................................................................. 8

        2.    The SAC does not allege a cognizable "motive and opportunity" to defraud. ........................................................................................................ 10

        3.    The SAC fails to allege "strong circumstantial evidence of conscious misbehavior or recklessness." ................................................... 11

            a.    The SAC alleges zero facts suggesting that Defendants knew of contradictory information. ............................................... 12

            b.    The SAC's supposed "red flags" and other alleged indicia of scienter are no indicia at all. ................................................... 13

        4.    The SAC's patently illogical scienter theory is outweighed by the more compelling non-culpable inferences. ............................................... 23

    B.    The SAC fails to state a Section 20(a) claim. ..................................................... 25

V.    CONCLUSION .............................................................................................................. 25

TABLE OF AUTHORITIES

**Page(s)**

CASES

*380544 Canada, Inc. v. Aspen Tech., Inc.*,
   544 F. Supp. 2d 199 (S.D.N.Y. 2008)....................................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................................7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)....................................................................................................2

*Avon Pension Fund v. GlaxoSmithKline PLC*,
   343 F. App'x 671 (2d Cir. 2009) .........................................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................................7

*Chill v. Gen. Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996).................................................................................................14

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
   540 F. Supp. 2d 464 (S.D.N.Y. 2008)...................................................................17, 19, 25

*City of Omaha v. CBS Corp.*,
   2011 WL 2119734 (S.D.N.Y. May 24, 2011), *aff'd*, 679 F.3d 64 (2d Cir. 2012)..................15

*Coronel v. Quanta Capital Holdings Ltd.*,
   2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) .......................................................................20

*Cortina v. Anavex Life Scis. Corp.*,
   2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) .....................................................................21

*Dobina v. Weatherford Int'l Ltd.*,
   909 F. Supp. 2d 228 (S.D.N.Y. 2012)...........................................................................13, 15

*ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)..........................................................................7, 8, 9, 10, 11

*Ezra Charitable Tr. v. Tyco Int'l, Ltd.* ......................................................................................21

*GE Inv'rs v. Gen. Elec. Co.*,
   447 F. App'x 229 (2d Cir. 2011) ...........................................................................................7

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011)............................................................................19, 20

*Goplen v. 51job, Inc.*,
 453 F. Supp. 2d 759 (S.D.N.Y. 2006)....................................................................13

*Hensley v. IEC Elecs. Corp.*,
 2014 WL 4473373 (S.D.N.Y. Sept. 11, 2014)..........................................1, 23, 25

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
 324 F. Supp. 2d 474 (S.D.N.Y. 2004)...........................................................12, 13

*In re Barrick Gold Corp. Sec. Litig.*,
 341 F. Supp. 3d 358 (S.D.N.Y. 2018)....................................................................14

*In re BISYS Sec. Litig.*,
 397 F. Supp. 2d 430 (S.D.N.Y. 2005)....................................................................20

*In re Bristol-Myers Squibb Sec. Litig.*,
 312 F. Supp. 2d 549 (S.D.N.Y. 2004)........................................................8, 10, 16

*In re China N.E. Petrol. Holdings Ltd. Sec. Litig.*,
 2015 WL 223779 (S.D.N.Y. Jan. 15, 2015), *aff'd in part,*
 *vacated in part on other grounds*, 615 F. App'x 44 (2d Cir. 2015)......................16

*In re CRM Holdings, Ltd. Sec. Litig.*,
 2012 WL 1646888 (S.D.N.Y. May 10, 2012) .......................................................20

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
 2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ...................................................2, 18

*In re DRDGOLD Ltd. Sec. Litig.*,
 472 F. Supp. 2d 562 (S.D.N.Y. 2007)..............................................................15, 25

*In re Gen. Elec. Sec. Litig.*,
 2020 WL 2306434 (S.D.N.Y. May 7, 2020),
 *aff'd*, 844 F. App'x 385 (2d Cir. 2021)................................................................22

*In re Gildan Activewear, Inc. Sec. Litig.*,
 636 F. Supp. 2d 261 (S.D.N.Y. 2009)....................................................................12

*In re Hardinge, Inc. Sec. Litig.*,
 696 F. Supp. 2d 309 (W.D.N.Y. 2010) ..................................................................11

*In re HEXO Corp. Sec. Litig.*,
 __ F. Supp. 3d __, 2021 WL 878589 (S.D.N.Y. Mar. 8, 2021).............................1

*In re Iconix Brand Grp., Inc.*,
 2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017) .......................................1, 13, 14, 15

iv

*In re JP Morgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005) ..................................................................23

*In re Kandi Techs. Grp., Inc. Sec. Litig.*,
  2019 WL 4918649 (S.D.N.Y. Oct. 4, 2019) .......................................10, 11, 18, 22

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
  26 F. Supp. 3d 278 (S.D.N.Y. 2014),
  *aff'd*, 616 F. App'x 442 (2d Cir. 2015) ....................................................1, 13, 25

*In re Molycorp, Inc. Sec. Litig.*,
  2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015) ..........................................1, 13, 17

*In re OSG Sec. Litig.*,
  12 F. Supp. 3d 622 (S.D.N.Y. 2014) ..................................................................13

*In re OSG Sec. Litig.*,
  971 F. Supp. 2d 387 (S.D.N.Y. 2013) ............................................................23, 24

*In re PetroChina Co. Ltd. Sec. Litig.*,
  120 F. Supp. 3d 340 (S.D.N.Y. 2015),
  *aff'd* (2d Cir. 15-2528 Mar. 21, 2016) ...........................................................11, 19

*In re Scottish Re Grp. Sec. Litig.*,
  524 F. Supp. 2d 370 (S.D.N.Y. 2007) ..................................................................19

*In re SunEdison, Inc. Sec. Litig.*,
  300 F. Supp. 3d 444 (S.D.N.Y. 2018) ..................................................................13

*In re Tenaris S.A. Sec. Litig.*,
  493 F. Supp. 3d 143 (E.D.N.Y. 2020) ..................................................................19

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ...........................................1, 15, 16

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2016) ..................................................................................24

*Inter-Loc. Pension Fund GCC/IBT v. Gen. Elec. Co.*,
  445 F. App'x 368, 370 (2d Cir. 2011) ..................................................................24

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) .............................................................................9, 10

*Lachman v. Revlon, Inc.*,
  487 F. Supp. 3d 111 (E.D.N.Y. 2020) ..................................................................18

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015) ........................................................9

*Malin v. XL Capital, Ltd.*,
  312 F. App'x 400 (2d Cir. 2009) ............................................................14

*Marks v. Energy Materials Corp.*,
  2015 WL 3616973 (S.D.N.Y. June 9, 2015) .............................................8

*Okla. Firefighters Pension & Ret. Sys. v. Ixia*,
  2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) ..........................................23

*Okla. Law Enf't Ret. Sys. v. Telefonaktiebolaget LM Ericsson*,
  2020 WL 127546 (S.D.N.Y. Jan. 10, 2020) .............................................18

*Reilly v. U.S. Physical Therapy, Inc.*,
  2018 WL 3559089 (S.D.N.Y. July 23, 2018) ...............................1, 15, 16, 22, 23

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004).............................................................7, 25

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009).................................................................9

*S.E.C. v. Egan*,
  994 F. Supp. 2d 558 (S.D.N.Y. 2014).................................................16, 17

*S.E.C. v. Espuelas*,
  579 F. Supp. 2d 461 (S.D.N.Y. 2008) .....................................................17

*Schiro v. Cemex, S.A.B. de C.V.*,
  396 F. Supp. 3d 283 (S.D.N.Y. 2019).....................................................18

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)..............................................................24

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
  33 F. Supp. 3d 401 (S.D.N.Y. 2014).....................................................23

*Stevelman v. Alias Research Inc.*,
  174 F.3d 79 (2d Cir. 1999)...............................................................24

*Teamsters Allied Benefit Funds v. McGraw*,
  2010 WL 882883 (S.D.N.Y. Mar. 11, 2010) ............................................19

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
  531 F.3d 190 (2d Cir. 2008)..............................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..................................................................................................2, 7, 8, 23

*Thomas v. Shiloh Indus., Inc.*,
  2017 WL 1102664 (S.D.N.Y. Mar. 23, 2017) .........................................................................1

*Varjabedian v. Emulex Corp.*,
  152 F. Supp. 3d 1226 (C.D. Cal. 2016), *aff'd in part, rev'd in part on other grounds*,
  888 F.3d 399 (9th Cir. 2018) .................................................................................................11

*Wilbush v. Ambac Fin. Grp., Inc.*,
  271 F. Supp. 3d 473 (S.D.N.Y. 2017).....................................................................................20

*Wyche v. Advanced Drainage Sys., Inc.*,
  2017 WL 971805 (S.D.N.Y. Mar. 10, 2017),
  *aff'd*, 710 F. App'x 471 (2d Cir. 2017)..............................................................................1, 15

*Zouras v. Hallman*,
  2004 WL 2191034 (D.N.H. Sept. 30, 2004).........................................................................21

## STATUTES

15 U.S.C. § 78u-4 ........................................................................................................................1, 8

## REGULATIONS

17 C.F.R. § 210.4-10....................................................................................................................3, 4

## OTHER AUTHORITIES

*Sec. & Exch. Comm'n Release Notice*, Release No. 113,
  2009 WL 375970 (S.E.C. Release No. SAB-113 Oct. 29, 2009) .............................................3

*Accounting and Reporting Practices in the Petroleum Industry*,
  23 RMMLF-INST 14 (1977) ....................................................................................................3

# I.   INTRODUCTION

While preparing its Q4 2019 financial statements, Gulfport Energy Corporation ("Gulfport") discovered an error in how it accounted in Q3 2019 for one of the many components that bears on the book value of its oil and gas properties. Gulfport then did what any company ought to do—investigated the error, issued a very-next-quarter restatement of its Q3 2019 financials to take the necessary impairment, and disclosed the relevant control deficiencies that contributed to the error.

This lawsuit followed, in which Plaintiff Joseph Rotunno's ("Plaintiff") Second Amended Complaint ("SAC") alleges that Gulfport's former CEO and its two former CFOs are liable for securities fraud based on Gulfport's accounting error and controls deficiencies. Such knee-jerk complaints are commonplace, and the contours for adjudicating their sufficiency are accordingly well settled. This is especially true of the all-important requirement under the Private Securities Litigation Reform Act ("PSLRA") that Plaintiff plead a "strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A).[1]  It is upon that element that courts in this District so routinely reject securities fraud complaints that nip at the heels of financial restatements without sufficiently particularized and cogent scienter allegations.[2]

The SAC, just as the Amended Complaint ("AC") that Defendants previously moved to dismiss, Dkt. 54, should join that list. The SAC pleads not one *fact*—no confidential witnesses, no internal reports, no contrary information at all—demonstrating any individual defendant's

---

[1] Unless otherwise noted, all internal quotation marks, citations, and footnotes from quoted material are omitted.

[2] *E.g.*, *In re HEXO Corp. Sec. Litig.*, __ F. Supp. 3d __, 2021 WL 878589, at *20 (S.D.N.Y. Mar. 8, 2021); *Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *17 (S.D.N.Y. July 23, 2018); *In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *17–19 (S.D.N.Y. Oct. 25, 2017); *Thomas v. Shiloh Indus., Inc.*, 2017 WL 1102664, at *6 (S.D.N.Y. Mar. 23, 2017); *Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *17 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471 (2d Cir. 2017); *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 298 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015); *In re Molycorp, Inc. Sec. Litig.*, 2015 WL 1097355, at *14–15 (S.D.N.Y. Mar. 12, 2015); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *6, *8 (S.D.N.Y. Dec. 16, 2014); *Hensley v. IEC Elecs. Corp.*, 2014 WL 4473373, at *5 (S.D.N.Y. Sept. 11, 2014).

contemporaneous awareness of the accounting problems or control deficiencies at issue in this case. The SAC tries to paper over that failure by piling on various shopworn scienter allegations—everything from the bare fact of the restatement itself, to GAAP violations, to SOX certifications, to a quasi "core operations" theory—that courts in this Circuit have rejected time and again. Alas, no multiplicity of hollow scienter allegations can add up to the requisite strong inference. "[Z]ero plus zero (plus zero plus zero plus zero) cannot equal one." *In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *15 (S.D.N.Y. Mar. 30, 2021).

The PSLRA requires dismissal where the inference that the defendants acted with scienter is not "cogent and at least as compelling" as the inference that they did not. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). The SAC's theory that Defendants committed securities fraud in one quarter, only to make an unprompted disclosure of the error and control deficiencies in the very next quarter, makes no sense—especially when the SAC gives not the slightest explanation for how Defendants profited off that supposed single-quarter inflation. The non-culpable inferences loom large over Plaintiff's poorly disguised fraud-by-hindsight theory, and the Court should dismiss the SAC accordingly.

## II.   BACKGROUND

### A.   Gulfport and its full-cost accounting method for oil and gas properties.

Gulfport is a Delaware corporation whose principal executive office is in Oklahoma City, Oklahoma. SAC ¶ 45. Gulfport engages in exploration, development, acquisition, and production of natural gas, crude oil, and natural gas liquids. *Id.* ¶ 14; Ex. 1, 2018 10-K, 2.[3]  Its principal oil and gas properties are in Eastern Ohio and Central Oklahoma. SAC ¶ 14; Ex. 1, 2018 10-K, 2.

---

[3] A court reviewing a Rule 12(b)(6) motion to dismiss "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

This case involves Gulfport's accounting for those properties.

The accounting profession has long recognized "certain problems unique to the [oil and gas] industry," including that "oil and gas is a wasting, nonregenerative resource," "capital requirements are massive," "risks are abnormally high," "values of reserves in place are difficult to determine," and "there is generally a significant period of time between the expenditure of exploratory funds and the measurement of benefits related to those expenditures." *Accounting and Reporting Practices in the Petroleum Industry*, 23 RMMLF-INST 14 at Table 2 (1977) (quoting *Tentative Conclusions On The Objectives Of Financial Statements Of Business Enterprises*, Financial Accounting Standards Board (Dec. 2, 1976)).

Two accounting methodologies—the "successful efforts" and "full cost" approaches—emerged to address these issues. Specifically, these methodologies guide registrants in determining whether to capitalize costs associated with properties (that is, add them to the asset side of the balance sheet) versus charging those costs as an expense against net income. The SEC allows both methodologies and specifies (1) when a registrant may switch between the two methodologies, (2) how consistently a registrant must adhere to a single methodology across its entire business, and (3) how to apply each methodology. *Sec. & Exch. Comm'n Release Notice*, Release No. 113, 2009 WL 375970 (S.E.C. Release No. SAB-113 Oct. 29, 2009).

Gulfport uses the full-cost method of accounting, as set forth in SEC Rule 4-10(c) of Regulation S-X. Ex. 1, 2018 10-K, F-9; *see* 17 C.F.R.§ 210.4-10(c) (describing the "[a]pplication of the full cost method of accounting"). The full-cost method segregates oil and gas assets into "proved properties" (*i.e.*, those with "proved reserves" that "can be estimated with reasonable certainty to be economically producible") and "unproved properties" (*i.e.*, "properties with no proved reserves"). 17 C.F.R. §§ 210.4-10(a)(22), (23), (32). Unlike the successful-efforts

method, which capitalizes only the costs associated with successful properties, the full-cost method capitalizes "all costs" associated with proved and unproved properties. *Id.* § 210.4-10(c)(2). As hydrocarbons are produced over time, however, the full-cost method amortizes and depletes (*i.e.*, recognizes as an expense) the costs associated with proved properties, abandoned properties, and properties that have undergone a "complete evaluation" (collectively, the "Amortization Base"). *Id.* § 210.4-10(c)(3)(ii).

The full-cost method also prescribes a quarterly ceiling test to serve as a "limitation on capitalized costs." *Id.* § 210.4-10(c)(4). That test ensures that a company's total capitalized costs "shall not exceed an amount (the cost center ceiling) equal to the sum of" (1) projected future revenues (less expenses) from proved reserves, using a discount factor of 10%; (2) the cost of properties not included in the Amortization Base; (3) the lower of cost or estimated fair value of unproved properties included in the Amortization Base; and (4) certain income tax effects associated with certain classes of properties. *Id.* § 210.4-10(c)(4)(i). If, in a given quarter, the total capitalized costs exceed that cost center ceiling, "the excess shall be charged to expense," and such amounts written down "shall not be reinstated for any subsequent increase in the cost center ceiling." *Id.* § 210.4-10(c)(4)(ii). Because the cost center ceiling depends on projected future revenues from proved reserves, and because commodities prices are notoriously volatile, Gulfport repeatedly warned investors that "[a] decline in oil and gas prices may result in an impairment of oil and gas properties" and that "[c]eiling test impairment can give us a significant loss for a particular period." *E.g.*, Ex. 1, 2018 10-K, 59.

**B.    Gulfport's Q3 2019 accounting error and Q4 2019 restatement.**

On October 31, 2019, Gulfport issued a press release containing its Q3 2019 financial statements, reporting a net loss of $48.8 million for the three months ended September 30, 2019 and net income of $248.4 million for the nine months ended September 30, 2019. SAC ¶ 131.

These figures included a $35.6 million impairment of Gulfport's oil and gas properties; depreciation, depletion, and amortization of $145.5 million and $388.9 million in the three and ninth months ended September 30, 2019, respectively; and a carrying value for its oil and gas properties of approximately $5.84 billion. *Id.* Gulfport issued its Q3 2019 10-Q on November 1, 2019, reporting these same financial results. *Id.* ¶ 135.

On February 27, 2020, Gulfport issued a press release containing its Q4 2019 and FY 2019 financial results. *Id.* ¶ 26. That press release also announced a restatement of the prior quarter's financial results (the "Q4 2019 Restatement"), which was necessitated by management's discovery during "a routine year-end financial review" of "an error related to the transfer of certain unevaluated leasehold costs to the amortization base." Ex. 2, 2/27/2020 8-K, 14. That same day, Gulfport issued another press release further explaining the Q3 2019 accounting error and how "[m]anagement determined it did not effectively design and maintain controls over the completeness and accuracy of the accounting of transfers of unevaluated capitalized costs into the amortization base for the three and nine month periods ended September 30, 2019 and the twelve month period ended December 31, 2019." Ex. 3, 2/27/2020 8-K, 2. Specifically, Gulfport determined that it "did not have an adequate process for monitoring that its accounting policies for transferring unevaluated oil and gas properties were consistently being performed timely and reconciled with the general ledger." *Id.*

Based on that discovery, Gulfport issued an amended 10-Q for Q3 2019 revising its financial statements to account for the corrected Amortization Base and corresponding ceiling-test analysis, resulting in a $571.4 million third-quarter impairment of its oil and gas properties (instead of $35.6 million as originally reported), a $484.8 million third quarter net loss (instead of $48.7 million), and a $163.2 million third quarter depreciation, deduction, and amortization

expense (instead of $145.5 million). SAC ¶ 85. Gulfport also revised its Q3 2019 discussion of its internal controls and SOX certifications to account for its identification of the material weakness that caused the Q3 2019 accounting error. *Id.* ¶¶ 91–94. Gulfport's 2019 10-K similarly discussed the foregoing material weakness in controls and included a February 27, 2020 audit report from Grant Thornton LLP on that topic. *Id.* ¶¶ 95–97.

**C.   Plaintiff files the AC and the SAC, alleging various false and misleading statements.**

Seizing on Gulfport's Q4 2019 Restatement and the stock drop in the days that followed, Robert F. Woodley filed suit on March 17, 2020 against Gulfport, David M. Wood (Gulfport's former CEO), Keri Crowell (Gulfport's CFO until August 2019), and Quentin R. Hicks (Gulfport's CFO from August 2019 to May 2021) (Wood, Crowell, and Hicks, collectively, "Defendants"), alleging violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. Dkt. 1. On February 8, 2021, the Court appointed Plaintiff as lead-plaintiff, Dkt. 42, and Plaintiff thereafter filed the AC. Broadly speaking, the AC alleged that Gulfport's Q4 2019 Restatement renders actionably false and misleading (1) the later-restated portions of Gulfport's Q3 2019 financial statements; (2) statements in Gulfport's Q1, Q2, and Q3 2019 Form 10-Qs certifying the effectiveness of Gulfport's internal and disclosure controls and its compliance with GAAP; and (3) various statements in Defendants' SOX certifications attached to those same 10-Qs. Dkt. 47. Defendants filed a pre-motion letter identifying the AC's deficiencies, and the Court granted leave for Defendants to move to dismiss. Dkt. 48; 5/21/21 Minute Entry.

Despite having declined the Court's invitation at the pre-motion conference to amend the AC to try to cure these deficiencies, 5/21/21 Hr'g Tr. 6, on the deadline for filing his opposition to the motion to dismiss, Plaintiff filed the SAC instead. Dkts. 54, 55, 61. Rather than add new substantive allegations, however, the SAC simply sprinkles in a few immaterial details and tries

unsuccessfully to bolster a couple deficient scienter allegations.[4] Because the SAC fails for the same reasons as the AC, Defendants now renew their motion to dismiss.

### III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard requires "[f]actual allegations . . . [that] raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim under Section 10(b) of the Exchange Act, "a plaintiff must adequately plead: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *GE Inv'rs v. Gen. Elec. Co.*, 447 F. App'x 229, 231 (2d Cir. 2011). "Rule 9(b) requires that averments of fraud be stated with particularity," meaning a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 231–32. The plaintiff also must meet the "[e]xacting pleading requirements" of the PSLRA, *Tellabs*, 551 U.S. at 313, which mandate (1) specific allegations of "why and how" each statement was false or misleading, *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004), and (2) "particular allegations giving rise to a strong inference of scienter" for each statement. *ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196

---

[4] The SAC does not name Gulfport as a defendant, given Gulfport's November 13, 2020 filing of a voluntary petition under Chapter 11 of the Bankruptcy Code. SAC ¶ 46. The bankruptcy court entered a confirmation order on April 28, 2021, and Wood and Hicks departed thereafter. Ex. 9, 05/18/2021 Gulfport Press Release.

(2d Cir. 2009). Courts must engage in a "comparative evaluation" of scienter, considering "not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs*, 551 U.S. at 14. A complaint that fails to satisfy the PSLRA "shall" be dismissed. 15 U.S.C. § 78u-4(b)(3)(A).

## IV.   ARGUMENT & AUTHORITIES

### A.   The SAC fails to state a Section 10(b) claim.

Like so many accounting-restatement complaints before it, the SAC stumbles for lack of the requisite strong inference of scienter. That glaring defect—even assuming the remaining elements of a Section 10(b) claim for argument's sake—warrants outright dismissal of the SAC. *See, e.g.*, *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 564, 565 n.10 (S.D.N.Y. 2004) (dismissing complaint for lack of scienter despite assuming that "the Restatement establishes that the prior financials were incorrect at the time and that the error was material"). And the Court need not give Plaintiff another chance to replead, as Plaintiff has already amended once in response to Defendants' motion to dismiss, and the meager allegations added in the SAC only compound its deficiencies. *See Marks v. Energy Materials Corp.*, 2015 WL 3616973, at *10 (S.D.N.Y. June 9, 2015) (dismissing with prejudice when "Plaintiff has already amended her complaint once in response to a motion to dismiss that was substantially similar to [the] instant motion, . . . which suggests that granting a further opportunity to amend would be futile").

### 1.   The SAC must plead facts giving rise to a strong inference of scienter.

Under the PSLRA, a plaintiff must plead "with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). To qualify as a "strong inference," the inference of scienter must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

"The requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198. To raise a strong inference of scienter through "motive and opportunity" to defraud, "plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). "[I]f Plaintiffs cannot make the 'motive' showing, then they could raise a strong inference of scienter under the 'strong circumstantial evidence' prong, 'though the strength of the circumstantial allegations must be correspondingly greater' if there is no motive." *ECA*, 553 F.3d at 198–99.

A plaintiff pleading the "conscious misbehavior or recklessness" theory of scienter must allege, "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* at 202–03. The recklessness required for scienter is "conscious recklessness—i.e., a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (emphases in original); *see also Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 162 (S.D.N.Y. 2015) (Ramos, J.) ("[r]ecklessness in the scienter context cannot be merely enhanced negligence") (alteration in original). "At least four circumstances may give rise to a strong inference of the requisite scienter: where the complaint sufficiently alleges that the defendants (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *ECA*, 553 F.3d at 199. The SAC fails to plead any of

these bases for a strong inference of scienter.

> **2.      The SAC does not allege a cognizable "motive and opportunity" to defraud.**

A motive allegation requires a "concrete and personal benefit to the individual defendants"—not a "generalized motive" that "could be imputed to any publicly-owned, for-profit endeavor." *Kalnit*, 264 F.3d at 139–40. The SAC pleads no such concrete and personal benefit. It does not, for example, allege that Defendants sold any stock at all (much less engaged in suspicious insider trading), reaped extraordinary incentive compensation, or stood to personally gain *anything* from the purportedly fraudulent Q3 2019 accounting. *See In re Kandi Techs. Grp., Inc. Sec. Litig.*, 2019 WL 4918649, at *5 (S.D.N.Y. Oct. 4, 2019) (Ramos, J.) (motive lacking in restatement case when "Plaintiffs d[id] not allege that the Individual Defendants sold any shares at any relevant time"). Indeed, during the Class Period, Wood and Hicks *added* to their total Gulfport holdings by purchasing significant quantities of stock[5]—"a fact wholly inconsistent with fraudulent intent." *In re Bristol-Myers Squibb*, 312 F. Supp. 2d at 561; *see also Avon Pension Fund v. GlaxoSmithKline PLC*, 343 F. App'x 671, 673 (2d Cir. 2009) (defendants "increas[ing] their net holdings" helped negate scienter).

The best Plaintiff can muster in response is perhaps the most quintessential of generalized motive allegations: purported "pressure" from shareholders for Defendants "to improve Gulfport's stock performance" and thus "conceal Gulfport's material weakness in internal control over financial reporting and its negative effect on Gulfport's financial statements in order to maintain the artificial inflation of Gulfport's stock price, and protect themselves from further shareholder scrutiny." SAC ¶ 110. But an alleged "motive to 'artificially inflate and maintain the market price of [a company's] securities,' [is] a motive that has been routinely rejected by courts

---

[5] *See* Ex. 5, 9/3/2019 Wood Form 4 (purchase of 40,000 Gulfport shares); Ex. 6, 9/3/2019 Hicks Form 4 (purchase of 15,000 Gulfport shares).

in this Circuit." *In re Kandi Techs.*, 2019 WL 4918649, at *5.[6]

The SAC's halfhearted efforts to expound upon this allegation—by quoting at length from the activist shareholders' letters themselves, SAC ¶¶ 98–112—are to no avail:

- Even alleged "unique and specific pressure to perform" remains a non-cognizable motive, *In re Hardinge, Inc. Sec. Litig.*, 696 F. Supp. 2d 309, 330 (W.D.N.Y. 2010), including when tied to purported pressure from activist shareholders. *E.g.*, *Varjabedian v. Emulex Corp.*, 152 F. Supp. 3d 1226, 1238 (C.D. Cal. 2016) (rejecting motive allegations tied to alleged pressure from "two activist hedge funds"), *aff'd in part, rev'd in part on other grounds*, 888 F.3d 399 (9th Cir. 2018).

- The SAC's quoted letters—contrary to Plaintiff's insinuation—directed "pressure" predominantly on Gulfport's *Board* (not the Management Defendants) and specifically voiced concern about the *Board's* purported failure to represent shareholder concerns and "fix[] the Company's capital allocation strategy" (not the carrying value of Gulfport's oil and gas properties). SAC ¶¶ 102–10.

- Similarly, the shareholders criticized the "Board's low combined stock ownership" in March 2019, SAC ¶ 103, which in no way diminishes the scienter-negating effect of the Management Defendants' August 2019 stock purchases. *Contra id.* ¶ 104.

- Finally, the SAC's theory that the Management Defendants cooked the books to appease an activist horde makes no sense as a sequential matter. Shareholder pressure on the Board only *increased* after Gulfport's Q3 2019 financials. *See* SAC ¶ 109 (November 21, 2019 letter making the first threat of overt action against the Board). Nor does the SAC's theory explain why Management would fudge the numbers to appease shareholders, only to reveal the error the *very next quarter*. *Infra* § IV.A.4.

Thus, the SAC's motive allegations are logically deficient and legally irrelevant.

### 3. The SAC fails to allege "strong circumstantial evidence of conscious misbehavior or recklessness."

Without a "'motive' showing," "the strength of the [SAC's] circumstantial allegations" of conscious misbehavior or recklessness "must be correspondingly greater." *ECA*, 553 F.3d at 198–99. The SAC seems to vacillate between allegations that Defendants "engaged in

---

[6] *See also, e.g.*, *ECA*, 553 F.3d at 198 ("[M]otives that are common to most corporate officers, such as . . . the desire to keep stock prices high . . . do not constitute 'motive.'"); *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 364 (S.D.N.Y. 2015) (Ramos, J.) (same), *aff'd* (2d Cir. 15-2528 Mar. 21, 2016); *see also 380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 220–21 (S.D.N.Y. 2008) (referring to allegations that executives committed fraud to "retain their lucrative positions" as "plainly insufficient to support a finding of motive").

deliberately illegal behavior; knew facts or had access to information suggesting that their public statements were not accurate; or failed to check information they had a duty to monitor." *Id.* at 199 (numbering omitted); *see, e.g.*, SAC ¶ 153 (alleging that "Defendants participated in a fraudulent scheme"); ¶ 188 (alleging that "Defendants had actual knowledge . . . and intended thereby to deceive . . . or, in the alternative, Defendants acted with reckless disregard for the truth"). However couched, the SAC's circumstantial scienter theories come up woefully short.

### a.   The SAC alleges zero facts suggesting that Defendants knew of contradictory information.

The SAC's oblique, naked reference to Defendants' purported "receipt of information reflecting the true facts," SAC ¶ 153, gets Plaintiff nowhere, since the SAC alleges *no facts* probative of Defendants' actual knowledge of contrary information. *See, e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) ("Where plaintiffs contend defendants had access to contrary facts, they must *specifically* identify the reports or statements containing this information.") (emphasis added); *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 273 (S.D.N.Y. 2009) (pointing out a failure to allege "exactly what contemporaneous data Defendants had, even to be able to suggest such knowledge"). More specifically, the SAC points to no confidential witnesses, no contradictory internal reports, nothing at all regarding Defendants' possession of contemporaneous information regarding the Q3 2019 accounting error or Gulfport's (later-discovered) deficiencies in controls.

The utter absence of such particularized factual allegations places the SAC in stark contrast with the cases Plaintiff cited in his pre-motion letter:

- *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474 (S.D.N.Y. 2004): Complaint alleged statements by a dozen confidential witnesses and established that it "was well known within the company that Atlas was experiencing difficulties in the area of inventory control," including that a named defendant was

in possession of a specific corrected inventory. *Id.* at 492–93.[7]

- *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622 (S.D.N.Y. 2014): Complaint alleged "specific documents, conversations, or exchanges from which defendants should have known about the" relevant accounting issue. *Id.* at 633.

- *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228 (S.D.N.Y. 2012): Complaint contained confidential-witness allegations that individual defendants were aware of specific "control deficiencies . . . that were expressly raised with" them. *Id.* at 247.[8]

Nothing resembling those allegations is present here. Where securities fraud allegations are similarly devoid of particularized facts indicating the individual defendants' contemporaneous knowledge of accounting issues, courts have had little trouble dismissing them. *See, e.g.*, *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 285 (S.D.N.Y. 2014) (dismissing § 10(b) restatement case when "[n]o confidential witness assert[ed] that any of the named individual defendants had personal knowledge of accounting problems"), *aff'd*, 616 F. App'x 442 (2d Cir. 2015); *In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *19 (S.D.N.Y. Oct. 25, 2017) (same when "Amended Complaint cite[d] no internal reports, documents, or communications that shed light on Defendant's knowledge of or conduct concerning the Company's accounting practices" and no "statements of confidential witnesses address[ed] these issues"); *supra* n.2 (collecting cases).

### b.   The SAC's supposed "red flags" and other alleged indicia of scienter are no indicia at all.

Without any specific facts upon which to erect a cogent scienter theory, Plaintiff resorts to a variety of "red flags" or other supposed circumstantial indicia of scienter. These

---

[7] Numerous cases have distinguished *Atlas* on this basis. *See, e.g.*, *In re Molycorp, Inc. Sec. Litig.*, 2015 WL 1097355, at *12 (S.D.N.Y. Mar. 12, 2015) ("But in *Atlas Air*, unlike here, confidential witnesses specifically alleged that a named defendant was in possession of the results of a specific corrected inventory and that prior to the disclosure of the financial misstatements, a confidential witness overheard a manager of revenue accounting state that the company had failed to write down debts that should have been written off."); *Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 774 (S.D.N.Y. 2006) (similarly distinguishing *Atlas*).

[8] *See In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 494 (S.D.N.Y. 2018) (distinguishing *Dobina* as a case in which "the defendant was personally told about specific deficiencies in controls").

allegations—which range from the boilerplate to the nonsensical—typify the quantity-over-quality approach that the Second Circuit and courts in this District uniformly reject. *E.g.*, *Malin v. XL Capital, Ltd.*, 312 F. App'x 400, 402 (2d Cir. 2009) ("[H]aving concluded that none of plaintiffs' allegations showed even a weak inference of scienter, there is no logical way that the District Court could then have determined that the combined effect of the allegations would form a *strong* inference of scienter."). Ultimately, none of these "individually insufficient allegations . . . combine to create an inference of scienter sufficient to satisfy the PSLRA." *In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 374 (S.D.N.Y. 2018).

### i.      The Bare Facts of Gulfport's Restatement, GAAP Violation, and Deficiencies in Controls.

First are the usual suspects in cases like this one—*i.e.*, the suggestion that Gulfport's failure to comply with GAAP, its accounting restatement (and the size of that restatement), and its disclosure of controls deficiencies are *themselves* indicative of Defendants' scienter. Dkt. 50 at 3. Not so. "[T]o demonstrate scienter through proof of conscious misbehavior or recklessness requires a plaintiff to offer far more than a misapplication of accounting principles." *In re Iconix*, 2017 WL 4898228, at *17; *see also, e.g.*, *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) ("Allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim.").

Furthermore, "[a]lthough the magnitude [of a restatement resulting from accounting errors] can be relevant to the scienter inquiry," "it is clear that the size of the [alleged] fraud alone does not create an inference of scienter, and the magnitude of the restatement resulting from the accounting errors must be presented *in tandem with other circumstantial evidence* to suggest scienter." *In re Iconix*, 2017 WL 4898228, at *17 (emphasis added & alterations in original). "A restatement is simply a correction, after the fact, of an accounting or other error in

14

financial results. The fact of an error, even a large error, does not suggest knowledge or intent to misstate when the financial results were originally published." *Id.* Thus, even a significant restatement, standing alone, does not create a strong inference of scienter.[9]

Likewise, a company's deficient internal controls do not suggest scienter where the deficiencies "are not alleged to have been flagged by the auditors or brought to the attention of Defendants until after the allegedly false and misleading financial statements were issued and in conjunction with the restatement." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *8 (S.D.N.Y. Dec. 16, 2014). In such a case, like this one, "[t]he accounting controls were an after-the-fact explanation for why the error had occurred, not a red flag before it was discovered." *Id.* Thus, the bare facts of Gulfport's restatement, GAAP violation, and deficiencies in controls simply do not contribute to an inference of scienter.

### ii.   *The Allegedly Straightforward Nature of the Accounting Error.*

Similarly dependent on Gulfport's accounting error itself is the SAC's repeated reference to the purportedly "not complex" nature of the "ceiling test concept" and its constituent parts. *E.g.*, SAC ¶ 4 ("The reconciliation of supporting records to the general ledger is not a sophisticated, complex concept or process—it's Accounting 101"); ¶ 162 (same). Presumably, the SAC seeks to conscript the principle that some accounting errors can themselves add to—but not independently create[10]—an inference of scienter when sufficiently "straightforward." *Reilly*

---

[9] *See, e.g.*, *Dobina*, 909 F. Supp. 2d at 251 (no scienter where company understated tax expense by more than $500 million); *In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 566 (S.D.N.Y. 2007) (no scienter where company's "restatement resulted in net income or losses that were overstated or understated in each of its fiscal 2004 quarter end financial statements by approximately 11 percent, 46 percent, 102 percent and 26 percent respectively"); *see also City of Omaha v. CBS Corp.*, 2011 WL 2119734, at *6 (S.D.N.Y. May 24, 2011) (no scienter where defendant's impairment test on goodwill led to $14 billion writedown), *aff'd*, 679 F.3d 64 (2d Cir. 2012).

[10] *See Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *17 (S.D.N.Y. Mar. 10, 2017) ("Even if the Court credited the alleged obviousness of the Company's GAAP violations, it would not support an inference of scienter because Plaintiff has not pleaded additional supporting allegations indicating that Defendants also possessed and ignored contrary facts or obvious 'red flags.'"), *aff'd*, 710 F. App'x 471 (2d Cir. 2017).

*v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *17 (S.D.N.Y. July 23, 2018). That theory falls apart under the slightest scrutiny.

First, courts do not blindly accept at the pleading stage rote incantations of the "straightforwardness" of an accounting metric. *See, e.g.*, *In re Turquoise Hill*, 2014 WL 7176187, at *6 (rejecting complaint's "conclusion that application of the relevant revenue recognition accounting principles was necessarily obvious or straightforward"); *In re Bristol-Myers Squibb*, 312 F. Supp. 2d at 566 (same). And here, despite the SAC's (uncorroborated) assertion that the ceiling test is "not complex," SAC ¶ 3, a court in this District has already said otherwise, concluding that the "calculations involved in accounting for . . . oil properties is similarly complex, requiring a ceiling test which itself is based on a number of complex calculations and projections." *In re China N.E. Petrol. Holdings Ltd. Sec. Litig.*, 2015 WL 223779, at *3 n.3 (S.D.N.Y. Jan. 15, 2015), *aff'd in part, vacated in part on other grounds sub nom. Acticon AG v. China N.E. Petrol. Holdings Ltd.*, 615 F. App'x 44, 46 (2d Cir. 2015) (affirming dismissal against individual defendants—except for one defendant whose motive and opportunity was adequately pleaded[11]—because "their failure to identify defects in the company's internal controls and errors in the company's accounting statements" did not constitute conscious recklessness for §10(b) liability).

Second, drilling down to the particulars of Gulfport's accounting error, it differs fundamentally from those that have contributed to inferences of scienter in a narrow set of cases. Such cases invariably deal with accounting decisions so "blatant[ly]" and "obviously wrong," *Reilly*, 2018 WL 3559089, at *17, that they were otherwise *unexplainable* except as "indicators of fraudulent activity." *S.E.C. v. Egan*, 994 F. Supp. 2d 558, 566 (S.D.N.Y. 2014) (involving

---

[11] Specifically, that defendant was alleged to have "loot[ed] China North's treasury and engag[ed] in unauthorized transfers of company funds." *China N.E. Petrol.*, 615 F. App'x at 45.

obvious fact that "same assets cannot be sold and then leased a few months later or that revenue is not earned from sham sales"); *S.E.C. v. Espuelas*, 579 F. Supp. 2d 461, 482 (S.D.N.Y. 2008) (involving company recognizing revenue on sales that were entirely contingent on further approval of the buyer).

Gulfport's Q3 2019 accounting error—a failure to "timely identif[y] and transfer[] leasehold costs associated acreage expirations, lease transfers, and proved reserve additions from the unevaluated capitalized cost pool to the evaluated amortization base" and to adequately oversee "timely performance and review of reconciliations of land records to the general ledger," SAC ¶¶ 33, 91—is light-years from the effectively made-up revenue in cases like *Egan* and *Espuelas*. It instead resembles the sort of lower-level "mistaken data entry" and "failure to catch such a mistake" that courts dismiss as non-probative of scienter in restatement cases when unadorned with particularized facts putting individual defendants on notice of such errors. *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 473–74 (S.D.N.Y. 2008) (dismissing restatement case for lack of strong inference of scienter when "the equally (if not more) plausible inference [was] that those two 'improprieties' were nothing more than mistakes"). Indeed, this holds true where, as here, the error involved "the reconciliation of" a company's "inventory to the general ledger." *In re Molycorp, Inc. Sec. Litig.*, 2015 WL 1097355, at *6 (S.D.N.Y. Mar. 12, 2015). Thus, the nature of the accounting error here adds nothing to scienter.

### iii. *The Defendants' SOX Certifications and Executive Positions.*

Plaintiff next posits that because Defendants signed SOX certifications and occupied high-level positions, they *must* have known about the purported fraud. SAC ¶ 94, 188. But "boilerplate Sarbanes-Oxley certifications without any factual allegation of [a defendant's] awareness of red flags" are inadequate to demonstrate scienter. *In re Kandi Techs.*, 2019 WL 4918649, at *6. That is because SOX certifications on their own "add nothing substantial to the

scienter calculus," and allowing "certifications to create an inference of scienter in every case where there was an accounting error . . . would eviscerate the pleading requirements for scienter set forth in the PSLRA." *In re Diebold Nixdorf, Inc.*, 2021 WL 1226627, at *14.

Courts also note that when SOX certifications, such as those at issue here, "contain[] an important qualification that a certifying officer's statements are true 'based on his [or her] knowledge," the certifications are "statements of opinion." *Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 134–35 (E.D.N.Y. 2020) (collecting cases); *e.g.*, Ex. 4, 3Q 2019 10-Q, Exs. 31.1-32.1. Therefore, a plaintiff "cannot raise an inference of fraudulent intent based on the signing of a certification without alleging any facts to show a *concomitant* awareness of or recklessness to the materially misleading nature of the statements." *In re Diebold Nixdorf, Inc.*, 2021 WL 1226627, at *14 (no scienter when complaint alleged nothing "beyond conjecture to suggest that Individual Defendants knew—at the time they signed their certifications—of any misrepresentations in [the company's] financial statements or deficiencies in the Company's internal controls"). Here, the SAC cursorily references Defendants' signing various 10-Qs, SAC ¶¶ 114–136, but ends up pleading just the kind of boilerplate allegations that "the controls must have been inadequate in light of the alleged accounting and reporting errors" that courts find "inadequate." *Okla. Law Enf't Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, 2020 WL 127546, at *9 (S.D.N.Y. Jan. 10, 2020).

Likewise, allegations that Defendants were among the executives responsible for maintaining internal controls do not move the needle. *See Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 307 (S.D.N.Y. 2019) ("The fact that a defendant had a duty to review the Company's internal controls is not a substitute for specific allegations that he was provided with information that demonstrated the *inadequacy* of those internal controls"). Similarly, the SAC's

supposition that Defendants received contrary information about the internal controls because of their corporate positions fails as a matter of law. *See Shaw Grp.*, 540 F. Supp. 2d at 473 (no scienter where allegations were based on defendants' positions in the company and plaintiff pleaded no facts indicating that "the alleged accounting improprieties were committed by the officer or were reported to him").[12] Indeed, this Court has recognized that "[i]t is well established that accusations founded on nothing more than a defendant's corporate position are entitled to *no weight*." *In re PetroChina*, 120 F. Supp. 3d at 366 (emphasis added).

### iv.   The Unrelated Resignation of Crowell.

No better is the SAC's attempt to rope Crowell's August 9, 2019 resignation into the scienter calculus. Resignations are "not themselves sufficient" to create a strong inference of scienter, and they only "add" to an existing inference when a plaintiff pleads facts rendering the resignations "highly unusual and suspicious." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011). For example, in *In re Scottish Re Group Securities Litigation*, 524 F. Supp. 2d 370 (S.D.N.Y. 2007), cited in Plaintiff's pre-motion letter, the court labeled as "highly unusual and suspicious" certain executives' resignations only because they occurred at the "same time" as the alleged corrective disclosure. *Id.* at 381 & n.176.

The AC alleged no "independent facts" tying Crowell's resignation to the purported fraud, *Glaser*, 772 F. Supp. 2d at 598, which was unsurprising given Crowell's resignation took place months *before* not only Gulfport's Q4 2019 Restatement, but also *the misstated Q3 2019*

---

[12] *See also, e.g.*, *Teamsters Allied Benefit Funds v. McGraw*, 2010 WL 882883, at *11 (S.D.N.Y. Mar. 11, 2010) (dismissing claims against officers and directors for alleged failure to maintain adequate internal controls where scienter allegations were based upon executive and board positions); *In re Tenaris S.A. Sec. Litig.*, 493 F. Supp. 3d 143, 164 (E.D.N.Y. 2020) (finding allegations that CFO was "directly involved in the day-to-day operation of Tenaris" and "privy to confidential information regarding Tenaris" were boilerplate conclusions based solely on the CFO's corporate position that did not support scienter in case involving internal controls over bribery prevention).

*financials themselves*—a temporal fact that negates any conceivable inference of scienter.[13]
Further still, "there are any number of reasons that an executive might resign, most of which are
not related to fraud," and the AC offered no factual "challenge [to] the[] non-fraud related
explanation[] for [Crowell's] resignation" issued by Gulfport. *In re BISYS Sec. Litig.*, 397 F.
Supp. 2d 430, 446–47 (S.D.N.Y. 2005).[14]

Attuned to that deficiency, the SAC adds only a blind supposition that Crowell resigned
to "avoid[] having to sign" the Q3 2019 financials, SAC ¶ 130—an allegation courts have
rejected when supplied with "no basis" to make such an inference. *Coronel v. Quanta Capital
Holdings Ltd.*, 2009 WL 174656, at *31 n.16 (S.D.N.Y. Jan. 26, 2009) (rejecting similar scienter
allegation premised on conjecture that director "failed to sign [an SEC filing] because of a lack
of confidence in the accuracy of the statements therein"). Because the SAC, just as the AC
before it, "allege[s] no *facts* linking the resignation of" Crowell—or anyone else for that
matter[15]—"to the accounting improprieties" Gulfport later discovered and promptly disclosed in
Q4 2019, "the resignations . . . do not support an inference of conscious misbehavior or
recklessness." *In re BISYS*, 397 F. Supp. 2d at 446–47 (emphasis added).

---

[13] *See, e.g.*, *Wilbush v. Ambac Fin. Grp., Inc.*, 271 F. Supp. 3d 473, 499 (S.D.N.Y. 2017) (concluding that
resignations were not suspicious when "none of them occurred at or about the time that Defendants' alleged fraud
was disclosed"); *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *29 (S.D.N.Y. May 10, 2012) (same
when executive "resigned during the class period, but his resignation was announced and occurred well before any
revelations of wrongdoing").

[14] Ex. 7, Gulfport 08/12/2019 8-K, 3 (explaining that Crowell would remain a Gulfport consultant and that "[t]here
were no disagreements between the Company and Ms. Crowell on matters relating to any control issues or
disagreements on the Company's financial statement disclosures or accounting policies or practices").

[15] The Court can reject out of hand the SAC's reference to certain Gulfport Board members stepping down or not
deciding to seek reelection before the Q4 2019 Restatement. SAC ¶ 128. First, those former Board members are "not
. . . named defendant[s]," and so their departures "create[] no inference of scienter on the part of any of the named
defendants." *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *29 (S.D.N.Y. May 10, 2012). Second, the
SAC makes no attempt whatsoever to connect those former Board members to Gulfport's accounting restatement—
much less tie their departures to the purported fraud. If anything, it does the opposite. *See, e.g.*, SAC ¶ 108
(referencing one member's retirement in conjunction with shareholder pressure concerning capital expenditures).

v.        *The Unrelated SEC Cease and Desist Order.*

Having just accused Crowell of resigning to *avoid* participating in the purported fraud, the SAC then turns around and insinuates that she was fully complicit. Specifically, the SAC references a wholly unrelated SEC Cease and Desist Order involving a past (non-defendant) Gulfport CEO's personal use of his company credit card from 2014 to 2018 (before the Class Period in this case but during Crowell's tenure as CFO) and posits that Crowell must have "engaged in substantially similar conduct during the Class Period." SAC ¶¶ 164–68. That, too, fails to give rise to any inference of scienter. *See, e.g.*, *Zouras v. Hallman,* 2004 WL 2191034, at *13 (D.N.H. Sept. 30, 2004) (no inference of scienter from prior cease and desist order, even though they related to the same individual defendant, because the claims at issue "b[ore] only a scant resemblance" to the SEC order); *Cortina v. Anavex Life Scis. Corp.*, 2016 WL 7480415, at *8 (S.D.N.Y. Dec. 29, 2016) (the existence of even a current "investigation[] cannot bolster allegations of scienter that do not exist").

Courts routinely reject attempts to bolster deficient scienter allegations through prior SEC cease and desist orders. In *Ezra Charitable Tr. v. Tyco Int'l, Ltd.*, for example, the court held that plaintiffs failed to plead with particularity a factual basis for current accounting issues involving Tyco, even though the plaintiffs had cited to an SEC ruling from several years earlier that determined that PwC's prior accounting practices with relation to Tyco were reckless. 2005 WL 2127619, at *5 (D.N.H. Sept. 2, 2005), *aff'd*, 466 F.3d 1 (1st Cir. 2006). There, plaintiffs' position "lack[ed] a clear factual basis" because they "rel[ied] primarily on claims about PwC's behavior with respect to Tyco's *past* accounting malfeasance," but provided no support for their theory that "scienter as to one set of transactions is warranted by assertions that the targeted defendant acted improperly with respect to matters that are unrelated to the claims at issue." *Id.* (emphasis added).

Nor is prior, unrelated accounting misconduct predictive of future improprieties, let alone indicative of scienter. *See In re Gen. Elec. Sec. Litig.*, 2020 WL 2306434, at *15 (S.D.N.Y. May 7, 2020) (dismissing complaint involving alleged accounting irregularities, as plaintiff's "laundry list" of circumstantial evidence, including the allegation that a company "allegedly engaged in a pattern of unrelated accounting misconduct," did not support an inference of scienter), *aff'd*, 844 F. App'x 385 (2d Cir. 2021). Here, the SAC entertains a similar stretch of the imagination, for the SEC's Cease and Desist Order concerning a former CEO's personal charges has nothing to do with Gulfport's accounting for its oil and gas properties or the controls associated therewith. Without any factual allegations tying the prior SEC Cease and Desist Order to the accounting issues presented in the case, this allegation adds nothing to the inference of scienter.

### vi.     *The SAC's Quasi-Core Operations Theory.*

The SAC never expressly alleges a "core operations" theory, but its gestures in the direction of such a theory add no inference of scienter. *See* SAC ¶ 160 (describing Gulfport's oil and gas properties as "the most significant and critical asset on its balance sheet"). The core operations theory posits that "the fact that . . . statements concerned the core operations of the company supports the inference that the defendant knew or should have known the statements were false when made." *Reilly*, 2018 WL 3559089, at *18. Notably, although "[t]he Second Circuit has not expressly determined if the 'core operations' doctrine remains applicable to proving scienter after the enactment of the PSLRA," it "has suggested that the doctrine can only provide additional support for an inference of scienter but could not establish scienter on its own." *In re Kandi Techs.*, 2019 WL 4918649, at *7.

Even if the core operations theory retains any viability, and even if the SAC had alleged a core operations theory of scienter, the SAC's allegations do not garner "additional support for an inference of scienter" because the SAC contains no predicate allegations of scienter to

supplement. Moreover, just because an accounting error pertains to the subject matter of a company's primary business—here, oil and gas—does not show that the defendants knew or should have known of the accounting error. *E.g.*, *Reilly*, 2018 WL 3559089, at *18 (rejecting core operations argument when the defendant company's "core operation [wa]s operating outpatient physical therapy clinics, not accounting for its managing therapists non-controlling interests" in those clinics). Indeed, "[n]umerous courts have found that accounting and related tax determinations are not part of a company's core operations." *Okla. Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *31 (C.D. Cal. Apr. 14, 2015) (citing *Hensley v. IEC Elecs. Corp.*, 2014 WL 4473373, at *5 (S.D.N.Y. Sept. 11, 2014); *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 409 (S.D.N.Y. 2013); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 628 (S.D.N.Y. 2005)).

### 4. The SAC's patently illogical scienter theory is outweighed by the more compelling non-culpable inferences.

For the above reasons, the SAC comes nowhere close to supporting a strong inference of scienter. *Supra* §§ IV.A.1–3. But even were it somehow otherwise, "a court may nonetheless dismiss [a] plaintiff's federal securities claims if 'a reasonable person would [not] deem the inference of scienter . . . at least as compelling as . . . opposing inference[s] one could draw from the facts alleged." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 434 (S.D.N.Y. 2014) (Ramos, J.) (quoting *Tellabs*, 551 U.S. at 324). That result would be manifestly correct here, as (1) the SAC's scienter theory makes next to no sense, and (2) plausible, non-culpable explanations abound.

The SAC's theory that Defendants engaged in a deliberate or reckless scheme to inflate Gulfport's Q3 2019 earnings is altogether illogical in light of the undisputed facts that Gulfport itself turned around and identified, investigated, and disclosed its accounting error and controls

deficiencies *the very next quarter,* and neither the Company nor any executive profited from the supposedly inflated stock price. *Supra* §§ II.B, IV.A.2. Courts consistently reject scienter allegations based on similar fact patterns due to the inability "to see what benefits accrue from a short respite from an inevitable day of reckoning." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994); *see also, e.g.*, *Inter-Loc. Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011) ("The complete absence of any motive to commit fraud on the part of Appellees is underscored by the fact that their alleged misstatements concerning the Company's quarterly earnings prospects were made no more than a few weeks before GE would inevitably be required to report its quarterly earnings to the market."). Plaintiff can only respond with cases involving the markedly different situation where a defendant gambled on concealing the truth, only to disclose it when *prompted* by some extraneous force. *See, e.g.*, Dkt. 50 at 3 (citing *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 97 (2d Cir. 2016) (involving defendants who waited until prosecutors announced the fraud before making any disclosures)). But the SAC sheds no light on why Defendants would spontaneously disclose a "fraud" they just finished committing, much less why they would all the while retain—and in Wood and Hicks's case, *increase*, *supra* n.5—their stock holdings in Gulfport despite purportedly knowing of the impending revelation.[16] *In re OSG*, 971 F. Supp. 2d at 411 (fact that defendants "actually bought OSG securities during the Class Period . . . undercuts the inference of scienter"). And, without any plausible explanation, the SAC's scienter theory boils down to the "fraud by hindsight" approach that courts swiftly reject in restatement cases. *E.g.*, *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84–85 (2d Cir. 1999).

---

[16] The SAC adds a half-sentence suggesting that Grant Thornton LLP's adverse opinion "forc[ed] Gulfport to disclose" controls deficiencies, SAC ¶ 8, but it leaves undisputed that Gulfport's management team first discovered the Q3 2019 accounting error during year-end financial review and independently assessed and discovered controls deficiencies. *See* Ex. 2, 2/27/2020 8-K, 14; Ex. 8, 2019 10-K, 108 (explaining that Grant Thornton "also audited" Gulfport's internal control over financial reporting).

The non-culpable inference, on the other hand, presents no such logical leaps. On similar records, courts find perfectly compelling the inference that, at most, the defendants negligently failed to discover the accounting error until afterwards, only to investigate and correct it. *E.g.*, *Hensley v. IEC Elecs. Corp.*, 2014 WL 4473373, at \*6 (S.D.N.Y. Sept. 11, 2014) (finding more compelling the inference that accounting error "was discovered, disclosed, and corrected by Defendants themselves"); *Magnum Hunter Res. Corp.*, 26 F. Supp. 3d at 297–98 (when company made "numerous accounting errors and revealed internal control weaknesses," absent "specific facts" demonstrating scienter, the complaint "support[ed] an inference of potentially poor accounting management" but not "fraud"); *In re DRDGOLD Ltd.*, 472 F. Supp. 2d at 574 ("It is not at all implausible that the accounting errors in DRD's quarterly reports that led to DRD's restatement were of the type likely to result from the simple negligence of inexperienced accounting personnel, rather than from fraud."). After all, a "failure of accounting controls . . . is not sinister at all," but rather a "mistake" that "sometimes . . . happen[s] in public companies." *Shaw Grp.*, 540 F. Supp. 2d at 473. The SAC offers nothing to disturb that inference, and the Court should dismiss Plaintiff's § 10(b) claim for that reason, and for those given above.

## B.   The SAC fails to state a Section 20(a) claim.

Because the SAC has not pleaded a primary violation, the Court also must dismiss the derivative Section 20(a) claim against Defendants. *Rombach*, 355 F.3d at 177–78.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss the SAC with prejudice.

Dated:  July 29, 2021                    Respectfully submitted,

                                         **BAKER BOTTS L.L.P.**


                                         By: */s/ David D. Sterling*⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
                                              Brian C. Kerr
                                              NY Bar No. 2806123
                                              30 Rockefeller Plaza
                                              New York, NY 10112-4498
                                              Tel: (212) 408-2543
                                              Fax: (212) 259-2543
                                              brian.kerr@bakerbotts.com

                                              David D. Sterling (*pro hac vice*)
                                              Texas Bar No. 19170000
                                              Amy Pharr Hefley (*pro hac vice*)
                                              Texas Bar No. 24046046
                                              Anthony J. Lucisano (*pro hac vice*)
                                              Texas Bar No. 24102118
                                              Elizabeth Furlow Malpass (*pro hac vice*)
                                              Texas Bar No. 24109899
                                              Frank Mace (*pro hac vice*)
                                              Texas Bar No. 24110609
                                              910 Louisiana St.
                                              Houston, Texas 77002
                                              Tel: (713) 229-1946
                                              Fax: (713) 229-7946
                                              david.sterling@bakerbotts.com
                                              amy.hefley@bakerbotts.com
                                              anthony.lucisano@bakerbotts.com
                                              elizabeth.furlow@bakerbotts.com
                                              frank.mace@bakerbotts.com

                                         **COUNSEL FOR DEFENDANTS DAVID M. WOOD, KERI
                                         CROWELL, AND QUENTIN R. HICKS**